**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADEL CANNON, | Case No. 1:15-cv-01095-SMS |
| Plaintiff, | |
| v. | ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Adel Cannon seeks review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") under Title II and for supplemental security income ("SSI") under Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.*) ("the Act"). The matter is before the Court on the parties' cross-briefs, which were submitted without oral argument to the Magistrate Judge. Following a review of the record and applicable law, the Court affirms the decision of the Administrative Law Judge ("ALJ").

I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND[1]

A. *Procedural History*

Plaintiff applied for DIB on December 14, 2011 and for SSI on December 28, 2011, alleging

---

[1] The relevant facts herein are taken from the Administrative Record ("AR").

1

disability beginning on April 15, 2010. The Commissioner denied Plaintiff's claims on March 23, 2012, and upon reconsideration on June 22, 2012. AR 115, 140, 167-168, 275, 279. Appearing at a hearing on July 11, 2013, before ALJ Robert Lowenstein, were Plaintiff, her counsel, a medical expert ("ME"), and a vocational expert ("VE"). AR 45. Thereafter, on September 9, 2013, ALJ Lowenstein issued a written decision finding Plaintiff not disabled under the Act. AR 39. On May 15, 2015, the Appeals Council denied review of the ALJ's decision, which thus became the Commissioner's final decision, and from which Plaintiff filed a timely complaint. AR 1, Doc. 1.

B. *Factual Background*

The Court will not recount in detail all the facts of this case, discussing only what is relevant to this appeal.

1. Medical Evidence

The bulk of Plaintiff's voluminous medical record comprise of reports from Kaiser Permanente medical centers in the cities of San Jose, Modesto, Hayward and Stockton. In May 2010, Plaintiff visited a Kaiser hospital complaining of back pain. AR 991. In the same month, she underwent an L4-5 discectomy with no complications, but continued to complain of significant back pain and numbness in her legs. AR 1072. The next month, Plaintiff reported she no longer had the severe back pain and leg pain she did before surgery, though she experienced left hip and thigh numbness. AR 1086. She was advised to start physical therapy and exercise. AR 581.

Two MRIs were taken between May and September 2010, with the last one showing that after the successful discectomy, there were stable mild degenerative disc changes at L4-L5 and L5-S1, no central or foraminal stenosis developing, and normal lumbar vertebrae height, signal and alignment. AR 434-437. From the time of Plaintiff's discectomy until December 2012, Plaintiff made nearly monthly contact or visits with Kaiser. The various reasons included surgery follow-up, worsening low back pain, chest pain, heartburn, medication refills, itchy eyes, discovery of a cyst in

the right breast, vaginal irritation, medication management, women's health physical exam, pap smear, endometrial biopsy, and hysteroscopy and biopsy of a uterine lesion.  AR 581-928.

In February 2012, Roger Wagner of MDSI Physician Services ("MDSI") conducted a comprehensive internal medicine evaluation of Plaintiff, who complained of low back pain, right leg edema and venous insufficiency, and asthma.  She reported engaging in activities such cooking, cleaning, shopping, and "performing her own activities of daily living without assistance and walks and does stretching and physical therapy type exercises."  Dr. Wagner observed Plaintiff "easily" get up from the chair in the waiting room, "walk at a brisk pace back to the examination room without assistance, [sit] completely comfortably, easily . . . get on and off the examination table, . . . bend over from a standing position and pick up a shoe from off the ground with . . . minimal discomfort."  He opined that functionally, Plaintiff could sit, stand and walk up to six hours, required no assistive device, lift and carry fifty pounds occasionally and twenty five pounds frequently.  She had no postural, manipulative, and workplace environmental limitations.  AR 967-972.

In March 2012, Richard Palmer, Ph.D., also of MDSI, completed a comprehensive psychiatric evaluation of Plaintiff.  He observed Plaintiff walk without assistance, though "her gait was very slow, cautious and apparently painful."  Dr. Palmer diagnosed Plaintiff with depressive disorder not otherwise specified, anxiety disorder not otherwise specified, and assigned her a GAF of 58.[2]  His functional assessments of Plaintiff were as follows:

- Is capable of managing funds as evidence by history of appropriate financial management.

- Is able to adequately perform one or two step simple repetitive tasks and is able to adequately perform complex tasks as there are no noted intellectual impairments at this time.

---

[2] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Garrison v. Colvin*, 759 F.3d 995, 1003 n.4 (9th Cir. 2014) (quotations and citation omitted).  A "score between 51 to 60 describes moderate symptoms or any moderate difficulty in social, occupational, or school functioning." *Id*. (internal quotations omitted).

- Has a *fair* ability to accept instructions from supervisors and interact with coworkers and the public. There are some minor social impairments at this time.

- Is able to perform work activities on a consistent basis without special or additional instructions as there are no noted intellectual impairments at this time.

- Has a *fair* ability to maintain regular attendance in the workplace as mental health symptoms may impact attendance.

- Has a *fair* ability to complete a normal workday or workweek without interruptions from a psychiatric condition as mental health symptoms may impact attendance.

- Has a *fair* ability to handle normal work related stress from a competitive work environment. Mental health symptoms may impact Ms. Cannon's ability to handle work related stress.

In sum, Dr. Palmer found that Plaintiff's mental health symptoms were chronic and would "not abate on its own within a one year period." He opined that she would benefit from therapy and continuing psychiatric medication. Her overall "prognosis [was] fair." AR 975-979 (emphasis added).

2. Plaintiff's Written Testimony

In her first disability report, Plaintiff reported the following conditions limited her ability to work: low back pain, swelling in feet and right leg, anxiety, degenerative bone disease, arthritis in the back, tailbone and legs, cyst on right kidney and gallstones. AR 315. The field officer interviewed Plaintiff face-to-face and noted she "sat for [the] entire interview." AR 312. Plaintiff also completed an Adult Function Report which set forth her alleged physical and mental functional limitations. AR 327-334.

In Plaintiff's second disability report, completed in June 2012, she reported surgery in the right leg but claims it did not help and has since experienced "burning pains in [the] calf and thigh[.]" AR 357. And in her third disability report, completed in August 2012, Plaintiff reported additional changes in her conditions. They included: diagnosis of fibromyalgia, hernia in the belly button, cyst under the right breast, and constant hemorrhaging for months. She could not lift more than five pounds and was tired from being in pain. AR 366-367.

3. <u>Hearing Before ALJ</u>

   *a. Plaintiff's Testimony*

Appearing before the ALJ, Plaintiff was 330 pounds at a height of five feet and nine inches. She testified that her most severe impairments were back and leg pain, depression, and anxiety. In an eight-hour workday, Plaintiff could: (1) stand for about fifteen minutes at a time and walk for about fifteen to twenty minutes at a time, with an aggregate stand and/or walk time of about two hours, and (2) sit for about fifteen to twenty minutes at a time, with an aggregate sit time of about two and a half hours. She could lift no more than fifteen pounds and no more than ten pounds repeatedly. She could only rarely bend, stoop, kneel, crouch, crawl and climb. Her low back pain was agitated by walking or sitting for long periods and was alleviated somewhat with the combination of medication and lying down. She was "always in pain." She did not use an assistive device. Her anxiety and depression were constant and required daily medications. She avoided places with people as they caused her to have panic attacks and spent most of her days in her room. AR 51-52, 55-61.

   *b. Medical Expert's Testimony*

The ME, Arthur Lorber, testified that Plaintiff was morbidly obese, which was a factor in her medical impairments. He opined she could: (1) lift twenty pounds occasionally and ten pounds frequently; (2) occasionally crouch and stoop, work around moving machinery, operate foot pedals, and ascend and descend stairs and /or ramps; and (3) stand and/or walk singularly or in combination of up to thirty minutes at a time for a total of six hours a day; and (4) sit for thirty minutes at a time for a total of six hours a day. She should not: kneel; crawl; work at unprotected heights; climb ladders, scaffolds, or ropes; be exposed to concentrated vibration, extreme cold, heat or airborne irritants. AR 66-67.

### c. Vocational Expert's Testimony

The VE, Thomas Dachelet, testified and classified Plaintiff's past work to include: cashier, customer service, and shipping and receiving. The VE responded to a number of hypotheticals from the ALJ. Among them was a hypothetical based on the functional assessments made by Dr. Palmer, of which the ALJ noted, "[a]ll we have is fair ability." And the VE responded, "[f]air I assimilate, I associate it as mild," and concluded that such person could perform "all past" jobs. AR 74-77.

When given the opportunity to examine the VE, Plaintiff's counsel stated:

> [F]air, in my experience is they usually use none, fair, or poor. I assume some mix between the two of moderate, marked, and extreme for those.
>
> So my question is with the fair, as the Judge mentioned, they kind of vaguely tried to elaborate on the fair ability that may impact attendance, a fair ability normal workday that may impact attendance, and a fair ability to handle stress that may impact ability to handle stress. So using somewhat of the vague terminology there, if this hypothetical person would be off task roughly 10 to 15 percent of the day as opposed to 20 to 25 percent of the day, and would reasonably be expected to miss two to three days, on average, a month as opposed to four plus days a month, with those kind of restrictions would there be any work in the national economy that that person could do?

The VE replied, "[n]ot as normally found. No." AR 81.

### 4. ALJ's Decision

A claimant is disabled under Titles II and XVI if he is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of no less than twelve months. 20 C.F.R. §§ 404.1505(a), 416.905(a). To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process which an ALJ must employ to evaluate an alleged disability.[3]

---

[3] "In brief, the ALJ considers whether a claimant is disabled by determining: (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more

In his written decision, the ALJ found that at step one, Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 15, 2010. At step two, Plaintiff had the following severe impairments: (1) degenerative disc disease of the lumbar spine, status post microdiskectomy with stenosis; (2) neurological signs and edema; (3) chronic venous insufficiency, status post radio frequency ablation; (4) morbid obesity; (5) hyperthyroidism; (6) gastroesophageal reflux disease (GERD); (7) affective disorder; (9) anxiety disorder; and (9) complex endometrial hyperplasia. At step three, Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Plaintiff had the RFC to perform a range of light work such that she could: lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for a total of for four hours, thirty minutes at a time with regular breaks; and sit for a total six hours, thirty minutes at a time with regular breaks, in an eight-hour workday. She was limited to occasional crouching, stooping, and climbing stairs and ramps. She could never: kneel; crawl; climb ladders, ropes or scaffolds; work at unprotected heights; be exposed to concentrated vibrations, airborne irritants, extreme cold or heat. She could occasionally work around moving machinery and use foot pedals, and has no limitations with respect to pushing and pulling other than with respect to carrying and/or lifting. Finally, she was limited to simple and repetitive work. As such, at step four, Plaintiff was unable to perform any past relevant work. But at step five, the ALJ concluded that Plaintiff could perform the work of a packing line worker, garment sorter, ampoule filler, document preparer, ampoule sealer, and tester. The ALJ therefore found Plaintiff not disabled under the Act from April 15, 2010 through the date of the decision. AR 28-38.

---

than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work. The claimant bears the burden of proof at steps one through four." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

## II.  DISCUSSION

A. *Legal Standards*

This Court reviews the Commissioner's final decision to determine if the findings are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 401 (1971)), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. "If the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the Commissioner.  However, we must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal citation and quotations omitted).  "If the evidence can support either outcome, the Commissioner's decision must be upheld." *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *see* 42 U.S.C. § 405(g) (2010).  But even if supported by substantial evidence, a decision may be set aside for legal error. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Moreover, an ALJ's error is harmless "when it was clear from the record that [the] error was inconsequential to the ultimate nondisability determination." *Robbins v. Soc. Sec. Admin*. 466 F.3d 880, 885 (9th Cir. 2006).

C. *Analysis*

In discussing Dr. Palmer's psychiatric evaluation, the ALJ stated in relevant part:

> The claimant complained of depression and anxiety.  The mental status examination revealed her mood was depressed with congruent affect. The findings from the mental status examination were otherwise unremarkable.  Dr. Palmer diagnosed depressive disorder, not otherwise specified and anxiety disorder, not otherwise specified  and assessed  a  global  assessment  of  functioning  (GAF)  score  of  58

>indicating moderate symptoms or difficulty functioning. Based on the examination, from a psychological standpoint, he opined the claimant would have *some* limitations in maintaining work attendance and handle work related stress.

AR 34 (emphasis added). The ALJ then proceeded to discuss the ME's testimony.

Based on the account, Plaintiff asserts the ALJ incorrectly described Dr. Palmer's opinions with the word "some" rather than "fair." This, according to Plaintiff, is reversible error because "[f]air is a serious limitation" and "the ALJ has simply parceled the record to support the wrongful denial of benefits." Plaintiff also insists "[t]he ALJ simply offered no rationale as to why Dr. Palmer's 'fair' limitations [concerning the ability to complete a normal workday and workweek] were rejected." Doc. 14, pp. 10-11.

As an initial matter, Plaintiff's citation to a form from the Wisconsin Department of Children and Families Division of Family and Economic Security to support his definition of "fair" is unpersuasive. The form is not controlling authority and the Court is therefore not bound to follow it. Nor is the Court bound to apply the definition of fair suggested by Plaintiff's counsel at the hearing—one who is off task roughly 10 to 15 percent of the day and is absent two to three days a month—where no evidence show such definition applies to Plaintiff.

Indeed, Dr. Palmer did not define what is meant by "fair" in his psychological assessments. Nonetheless, it is the ALJ who is tasked with interpreting the assessments and all other medical evidence. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("For highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency.") (quotations omitted). Any confusion regarding the meaning of the word "fair" is for the ALJ to resolve. *See id.* ("We leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record") (quotations omitted). And a holistic reading of the ALJ's

decision shows he did not interpret *fair* to mean a serious limitation.

The word *some* was used by the ALJ only in recounting Dr. Palmer's opinions. The ALJ had not expressed his acceptance or rejection of the opinion. The description that Plaintiff had *some* limitations in no way undermined the characterization of those limitations as *fair*. While *fair* was used by Dr. Palmer to indicate the degree of the limitations, *some* was used by the ALJ to quantify their existence. The two descriptions are not mutually exclusive.

With regard to Dr. Palmer's assessment about Plaintiff's ability to complete a normal workday and workweek, he has not actually shown that the ALJ rejected them. *See Burch*, 400 F.3d at 679 (stating the claimant in Social Security cases bears the burden of proving disability at steps one through four). The ALJ's silence was not a rejection, as evident by the fact that where he found the assessments questionable, he expressly gave it less weight and explained his decision. To illustrate, the ALJ stated:

> [T]he undersigned gave some but not significant weight to the opinions of . . . Dr. Palmer. Dr. Palmer opined the claimant would be able to perform one to two step simple repetitive tasks. However he also opined she could perform more complex tasks. The undersigned finds this determination somewhat inconsistent with his findings and diagnosis. Dr. Palmer assessed the claimant with a GAF score of 58, which would indicate moderate limitations in functioning. If the claimant was moderately limited, it is reasonable to conclude this would affect her ability to perform more complex tasks. For this reason, his opinion was only partially credible.

AR 34. The ALJ thus rejected the assessment that Plaintiff could perform complex tasks, an assessment which was in fact unfavorable to Plaintiff. That the ALJ did not discuss every assessment made by Dr. Palmer was not error, especially where no evidence shows they are material to the disability determination when he is not required to discuss every part of Dr. Palmer's opinion. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (stating an "ALJ does not need to discuss every piece of evidence" or "evidence that is neither significant nor probative")

(internal quotations and citations omitted).  Plaintiff's insistence that the ALJ adopt the assessment is premised on his definition of *fair*, which as the Court has explained, was not binding on the ALJ.

For these reasons, the Court finds Plaintiff's contention unavailing.

### III.  CONCLUSION

Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court shall enter judgment in favor of the Commissioner of Social Security and against Plaintiff, Adel Cannon.

IT IS SO ORDERED.

Dated:   **October 14, 2016**                              **/s/ Sandra M. Snyder**
                                                                        UNITED STATES MAGISTRATE JUDGE

11